UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

BILL DIODATO PHOTOGRAPHY, LLC,          :

              Plaintiff,          :          **<u>OPINION</u>**

     - against -          :          04 Civ. 2886 (DC)

KATE SPADE, LLC,          :

              Defendant.          :

- - - - - - - - - - - - - - - - - -x

**CHIN, D.J.**

       In 2001, Bill Diodato took a photograph, shown here, of the bottom of a bathroom stall. Through the opening underneath the door, one can see a woman's feet, astride a toilet, in stylish, colorful shoes, her underwear hanging above her ankles, and a handbag resting on the floor. Diodato submitted the photograph to defendant Kate Spade LLC ("Kate Spade") in January



2003. Although representatives of Kate Spade deny they saw the photograph, Kate Spade's November 2003 advertising campaign included a photograph, shown below, of a woman's feet, astride a toilet, in stylish, colorful shoes, with a handbag on the floor.

Diodato's company, plaintiff Bill Diodato Photography, LLC ("BDP"), sued for copyright infringe- ment and unfair com- petition.



Before the Court is Kate Spade's motion for summary judgment and BDP's motion for additional discovery pursuant to Fed. R. Civ. P. 56(f). As discussed more fully below, although the idea of using a woman sitting on a toilet to showcase stylish shoes and other fashion accessories is a clever one, it is an idea that has been used often in popular culture. Hence, Diodato's photograph contains elements that are not protected by the copyright laws. Even assuming there was copying here, Kate Spade's motion for summary judgment must be granted and the complaint dismissed. In addition, for the reasons set forth below, BDP's Rule 56(f) motion is denied.

**BACKGROUND**

**A.    Facts**

The following facts are drawn from the pleadings and the parties' motion papers and supporting materials. All conflicts in the evidence have been resolved in favor of BDP, the party opposing summary judgment.

### 1.  __The BDP Photograph__

Diodato is a fashion accessory photographer and the principal of BDP.  (Diodato Dep. at 7-9).  In late 2001, BDP was hired by the magazine Angeleno to shoot a series of photographs featuring fashion accessories with New York City as a central theme.  (Id. at 154-63, 167).  Diodato chose to illustrate that "highly fashionable women can be somewhat tacky," and on December 14, 2001 he photographed models in a Burger King restaurant, on streets in New York City, and in a taxi cab.  (Id. at 154, 158-61, 205).  The photograph at issue here (the "BDP Photograph") was among the photographs in the series.  (Id. at 159-60).

The BDP Photograph was taken from the floor outside a bathroom stall.  (See Diodato Aff. Ex. A; id. ¶ 5).[1]  It depicts the bottom portion of the stall and a woman's feet in pink shoes decorated with green, yellow, and purple leaves, with thin pink straps criss-crossing up her legs.  The woman's lime green underpants are taut just above her ankles.  A light brown handbag rests on the floor next to the woman's left foot, and a white toilet is visible in the background.  The woman's feet are on the floor, her heels raised at a stiff angle by the heels of her shoes.  The woman's ankles are turned in, with her toes painted red.

---

[1]    Kate Spade argues that Diodato Affidavit Exhibit A is a manipulation of the BDP Photograph and that the Court should disregard Exhibit A and instead rely on the photograph included as Exhibit B to the complaint.  (Kate Spade Reply Mem. at 8).  Because Diodato testified that Exhibit A was the image included in his portfolio during the time relevant to this dispute, I rely on that image throughout this decision and this is the "BDP Photograph" referred to in the text.  (See Diodato Aff. ¶ 5).

The BDP Photograph is taken from a distance, with the bathroom stall and door separating the subject and the camera. Almost the entire bottom half of the photograph consists of the light grey lines of the floor tiles, with virtually all of the floor out-of-focus.[2] The floor comes into focus halfway up the photograph, where the woman's feet touch the ground and the handbag sits. The photograph is framed at the top and on the left by the darker grey of the bathroom stall and door. A light seems to shine on the legs, toilet, and handbag, in contrast to the shadows in the foreground and background.[3] The overall tone of the photograph is whimsical, fun, and bright.

Angeleno did not run the BDP Photograph as part of the series, and the BDP Photograph has not been published commercially. (Diodato Dep. at 164, 176-79). It has been a part of BDP's fashion accessory portfolio (the "Portfolio") from late 2002 to the present and is, in one form or another, on the BDP website. (Diodato Aff. ¶ 5; Diodato Dep. 146-47; Casey Dep. at 150).

**2.  <u>Interactions Between BDP and Kate Spade</u>**

Since at least late 2002, BDP has been represented by a photography agency, Marge Casey & Associates ("MCA"). (<u>Id.</u> at

_____

[2]     Diodato explains that he "use[s] negative space to create center of emphasis" and that he does so in ninety percent of his work to set forth an idea or to frame the subject. (Diodato Dep. 185-88).

[3]     In taking the BDP Photograph, Diodato used a light that was positioned above the stall, actually centered between two stalls. (Diodato Dep. 185).

12, 20, 145). On January 13, 2003, MCA received a call from Kate Spade requesting the Portfolio, among other portfolios. (Id. at 157-61). According to Margaret Casey, an owner of MCA, the request was made by Julia Leach, Kate Spade's executive vice president of brand strategy/creative services, or someone on Leach's behalf. (Id. at 12, 159-60; Leach Aff. ¶ 1; see also Diodato Aff. Ex. E).[4] Notes taken by an MCA employee on an "MCA Photo Request Form" dated January 13, 2003 and referring to BDP portfolios include "Julia Leach" written next to "Contact" and "Kate Spade" written next to "Agency." (Id.).

On January 15, 2003, the Portfolio was sent by messenger to Kate Spade. (Casey Dep. at 167, 183-84; Diodato Aff. Ex. E, F). It was returned to MCA on January 22, 2003, after a Kate Spade employee told MCA that Kate Spade liked the Portfolio and wanted to see it again in three or four weeks when Kate Spade planned to create concepts and shoot photographs for an advertising campaign. (Casey Dep. at 166, 171, 175, 184; Diodato Aff. Ex. E, F).

The Portfolio was sent again to Kate Spade on February 13, 2003. (Casey Dep. at 186; Diodato Aff. Ex. E, F). While Kate Spade had the Portfolio, Casey called to inquire whether Kate Spade was interested in using BDP as a photographer. (Casey Dep. at 175). Casey was told by a Kate Spade "assistant" that Kate Spade only worked with important or well-known

---

[4] Leach denies soliciting, receiving, or reviewing any of BDP's portfolios. (Leach Aff. ¶ 12).

photographers.  (Id. at 175, 188).  The Portfolio was returned to
MCA on February 24, 2003.  (Id. at 187; Diodato Aff. Ex. E, F).
Kate Spade did not contact MCA or BDP further about the
advertising campaign.

### 3.  The Kate Spade Photograph

Photographer Jessica Craig Martin was contacted by Kate
Spade in March 2003 about the company's fall 2003 advertising
campaign.  (Craig Martin Aff. ¶¶ 1, 15).  Craig Martin met with
principals of Kate Spade in April or May 2003, at which time
Craig Martin's portfolio was reviewed and ideas for the
advertising campaign were discussed.  (Id. ¶ 16; Leach Aff. ¶¶ 2,
5, 7).  It was agreed that Kate Spade would throw a party to
celebrate its tenth anniversary and that Craig Martin would take
candid, paparazzi-style photographs at the party.  (Id. ¶ 5).
According to Kate Spade, ideas for potential images were
discussed at the meeting, and Kate Spade officials referenced
photographs in Craig Martin's portfolio as exemplifying what they
wanted.  (Id. ¶ 7).  Among those photographs was one taken by
Craig Martin in 2000 from the floor of a bathroom, featuring a
side view of the feet and gold shoes of two women in bathroom
stalls (the "2000 Craig Martin Photograph").  (Id.; see Craig
Martin Aff. ¶ 8, Ex. D).  In that photograph, one of the women is
wearing fishnet stockings and bright light reflects from the
women's shoes and the floor.  (Id., Ex. D).  The 2000 Craig
Martin Photograph has been exhibited publicly and distributed as
a postcard, and copies of the photograph have been sold.  (Id. ¶¶
10-14).

Kate Spade eventually hired Craig Martin to conceptualize and shoot photographs for the advertising campaign. (Leach Aff. ¶ 6). In early June 2003, Craig Martin took photographs at Kate Spade's anniversary party at the Explorers' Club in New York City, as planned. (Craig Martin Aff. ¶ 17). Among those was the allegedly infringing photograph, taken in the bathroom of the Explorers' Club (the "Kate Spade Photograph"). (Id. ¶ 18; see Compl. Ex. C). It was among the thirty to fifty images that Kate Spade ordered from Craig Martin after the shoot, and it ultimately was one of the approximately fourteen photographs used in Kate Spade's fall 2003 advertising campaign. (Craig Martin Aff. ¶ 25; 1/6/05 Martin Aff. Ex. A, B).

The Kate Spade Photograph is taken from the tiled floor in front of a toilet. (Compl. Ex. C). A woman's legs are visible from just below the knees; she wears purple-tinted fishnet stockings and satin pink shoes with straps criss-crossing once around her ankle, and her light tulle petticoats fall to the side of the toilet. A shiny, silver square handbag sits next to her left foot. The Kate Spade Photograph is cropped close to the woman, the toilet between her legs, and the handbag, so that little of the surrounding area is visible, aside from square tiles on the wall. The bottom portion of the Kate Spade Photograph consists of smaller floor tiles, mottled in color and texture.

With the exception of the extreme foreground, the floor and other images are in focus, grounding the photograph. In

addition, there seems to be a spotlight shining on the center of the frame, creating sharp contrasts in light.[5]  The entire photograph is detail-rich and textured.  The purse has a metallic shine and creases; light reflects off the bows on the satin shoes; and the distinct patterns of the wide-net stockings and the tile floor add energy to the photograph.  The woman's feet are pointed toward each other, her left foot is slightly raised and leaning on its side.  The image seems to be of an evening event, as the woman is dressed in party attire and the shadows are dark.

According to Kate Spade, Craig Martin created all the photographs for the advertising campaign without direction or instruction from Kate Spade, except that Kate Spade provided direction as to which Kate Spade products were to appear in the campaign.  (Leach Aff. ¶ 8; Craig Martin ¶¶ 27-28).  Likewise, Leach testified that Kate Spade did not provide photographs, sketches, or preparatory materials for the shoot to Craig Martin and that Kate Spade does not have copies of the Portfolio in its offices.  (Leach Aff. ¶¶ 10, 14; <u>see also</u> Craig Martin ¶¶ 27-28).

### 4.  <u>Other Uses of the Concept</u>

The idea of a woman's feet at the base of a toilet to showcase shoes and other fashion accessories has been used often in popular culture.  Kate Spade attaches to its papers copies of

---

[5]     Craig Martin testified that the "signature element of all of [her] work . . . is the very strong artificial light and flash that [she] always use[s]."  (Craig Martin Aff. ¶ 20).  Her camera is "configured in a paparazzi-style setup" and she "never take[s] photographs at a polite distance."  (<u>Id.</u>).

photographs of this type, culled from image banks of stock photography agencies.  (See 1/6/05 Martin Aff. Ex. F, G, H, I, L, M, O, P).  These include photographs of: (1) a woman on a toilet with animal-patterned underwear around her ankles, her knees together and her feet pointed inward (Ex. G); (2) a woman's ankles and feet in hot pink sandals with flowers on the straps, toenails painted, and toes pointed inward, tile floor and toilet bowl cleaner visible (Ex. H); (3) the view under two toilet stall doors of two models (it is unclear whether they are male or female) in heels, with one model's toes pointed inward (Ex. F); (4) a side view of two stalls that seem to be in a bathroom, a woman in black heels visible in one stall and a woman in heeled loafers with a briefcase in the other (Ex. L); (5) a side view of a woman on a toilet seat, hot pink underwear near her ankles, her feet awkwardly angled in her high heels and toes seemingly pointed inward (Ex. O); and (6) a woman in a cut-off jeans skirt on a toilet seat, blue and white g-string underwear around her calves, her heels raised and toes pointed inward (Ex. P).

The record does not indicate when these photographs were taken, but these are stock photographs readily available from photography agencies.  Some appear to be taken many years ago.  (Id. Ex. F, I, M, Q).  Nor are the photographs limited to women; one is a photograph of the bottoms of two bathroom stalls, showing the feet of two men in boots, their blue jeans down around their legs and feet.  (Id. Ex. J).

The movie Charlie's Angels Full Throttle (Columbia

Pictures 2003) uses a similar image to humorous effect.  In one scene, Cameron Diaz's character, Natalie Cook, enters a boys' bathroom during a high school reunion.  She walks into a stall, the doors close, and only her feet are visible under the stall door.  Her toes point in slightly and a pair of Spiderman underpants drop to her ankles.  The viewer sees only the bottom of the toilet stall door, the Spiderman underpants, and Diaz's feet.

In another example, a 1997 Candie's Shoes advertising campaign featured actress Jenny McCarthy on a toilet wearing Candie's Shoes, white underwear around her legs.  At least two of the photographs in the campaign are shot from above McCarthy and include her whole body.[6]  In the photographs, McCarthy's knees are together, her feet are turned inward, and the side of the shoes are visible.

Finally, as noted above, Craig Martin had previously photographed the feet of two women, in shiny gold shoes and side-by-side bathroom stalls, in a photograph that was widely circulated.  (See Craig Martin Aff. Ex. D).  In the 2000 Craig Martin Photograph, the viewer sees only the feet, shoes, floor, and a small portion of a low bathroom stall divider.

B.    **Procedural History**

BDP filed this case on April 15, 2004, alleging that

_____

[6]    See, e.g., http://home.business.utah.edu/~mktrwb/candies.jpg (last visited Sept. 21, 2005); http://www.jennymccarthy.com/candies.html (last visited Sept. 24, 2005); http://www.ew.com/ew/features/archive/jenny/ jenny4.html (last visited Sept. 24, 2005).

after review of the Portfolio, Kate Spade copied the BDP Photograph without authorization.  BDP raises claims of copyright infringement and unfair competition under the Copyright Act and the Lanham Act, respectively.  The parties engaged in discovery. Kate Spade moves for summary judgment on the grounds that Craig Martin did not have access to the BDP Photograph, Craig Martin independently created the Kate Spade Photograph, the two works are not substantially similar as a matter of law, and BDP failed to state a claim under the Lanham Act.  BDP moves for additional discovery pursuant to Rule 56(f).

**DISCUSSION**

I discuss first the copyright claim, second the Lanham Act claim, and third the Rule 56(f) motion.

**A.    Copyright Infringement**

**1.    Applicable Law**

To prevail on a claim of copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991).  As BDP provided the Court with a copy of the certificate of copyright registration for the BDP Photograph, and Kate Spade does not contest the validity of the copyright, I assume BDP owns a valid copyright in the BDP Photograph.  (<u>See</u> Compl. Ex. A; Kate Spade Mem. at 3-4).  The second element, copying, is comprised of two requirements: actual copying and improper appropriation.

### a. **Actual Copying**

Actual copying may be established by either (1) direct evidence of copying or (2) circumstantial proof of copying, consisting of evidence that the alleged infringer had access to the protected work and "that there are similarities between the two works that are probative of copying." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotation marks omitted); see Ringgold v. Black Entm't Television, Inc., 126 F.3d 70, 74-75 (2d Cir. 1997) (using the term "probative similarity" to describe the similarity required at this stage of the analysis). "Access may be . . . inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work." Boisson v. Banian, Ltd., 273 F.3d 262, 270 (2d Cir. 2001). "A reasonable possibility" is not simply a "bare possibility"; "access cannot be based on mere speculation or conjecture." Jorgensen, 351 F.3d at 51 (internal quotations omitted). The copyright owner must offer "significant, affirmative and probative evidence" to support a claim of access. Id. (internal quotations omitted). The existence of similarities supports the inference of copying, and a probative similarity "requires only the fact that the infringing work copies something from the copyrighted work." Ringgold, 126 F.3d at 75.

### b. **Improper Appropriation**

Once actual copying has been established, the copyright

owner must then satisfy the "improper appropriation" requirement
by demonstrating that "substantial similarities" as to the
protected elements of the work would cause an average lay
observer to "recognize the alleged copy as having been
appropriated from the copyrighted work." <u>Durham Indus., Inc. v.
Tomy Corp.</u>, 630 F.2d 905, 911-12 (2d Cir. 1980) (quotations and
citations omitted).[7]  "For [this] prong it is essential that the
similarity relate to copyrightable material." <u>McDonald v.
Multimedia Entm't, Inc.</u>, No. 90 Civ. 6356(KC), 1991 U.S. Dist.
LEXIS 10649, at *6 (S.D.N.Y. July 19, 1991).  When similar works
resemble each other only in unprotected aspects -- for example,
when similarities inhere in ideas, which are by definition
unprotected, or in expression that is not proprietary to
plaintiff -- defendant prevails.  4 Melville B. Nimmer & David
Nimmer, <u>Nimmer on Copyright</u> § 13.03[B][2] (2005).

     Careful scrutiny is necessary when the protected work
contains unprotectible elements.  <u>See</u> <u>Knitwaves, Inc. v.</u>

_____

     [7]    An analysis of similarity under the improper
appropriation prong of a copyright infringement claim is distinct
from that under the actual copying prong.  "The similarities
[under the first] prong of the test need only 'raise a question
of actual copying'; they need not be 'substantial.'"  <u>Kerr v. New
Yorker Magazine, Inc.</u>, 63 F. Supp. 2d 320, 325 (S.D.N.Y. 1999)
(quoting <u>Laureyssens v. Idea Group, Inc.</u>, 964 F.2d 131, 140 (2d
Cir. 1992)).  Under the second prong, the court considers whether
"the copying is quantitatively and qualitatively sufficient to
support the legal conclusion that infringement (actionable
copying) has occurred."  <u>Ringgold</u>, 126 F.3d at 75.  Such a
comparison "must be made on a case-by-case basis, as there are no
bright-line rules for what constitutes substantial similarity."
<u>Sandoval v. New Line Cinema Corp.</u>, 147 F.3d 215, 217 (2d Cir.
1998) (citing <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569,
577 (1994)).

<u>Lollytogs Ltd.</u>, 71 F.3d 996, 1002 (2d Cir. 1995) ("[W]here we compare [works] that contain both protectible and unprotectible elements, our inspection must be 'more discerning'; we must attempt to extract the unprotectible elements from our consideration and ask whether the <u>protectible</u> <u>elements</u>, <u>standing alone</u>, are substantially similar." (emphasis in original)).

Critical to the issue of improper appropriation is whether the copied elements of the work are original and nontrivial. <u>See</u> <u>Feist Publ'ns</u>, 499 U.S. at 345 ("The <u>sine</u> <u>qua non</u> of copyright is originality."). For purposes of copyright law, "original" means that "the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." <u>Id.</u> Notwithstanding proof that copying occurred, copying that is so trivial as to fall below the quantitative threshold of substantial similarity will be considered <u>de</u> <u>minimis</u> and, thus, not actionable. <u>Sandoval</u>, 147 F.3d at 217 (quoting <u>Ringgold</u>, 126 F.3d at 74); <u>see also</u> <u>Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.</u>, 166 F.3d 65, 71 (2d Cir. 1999).

A central tenet of copyright law is that only a copyright owner's particular expression of his or her idea is protected, not the idea itself. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea . . . [or] concept . . . regardless of the form in which it is described, explained, illustrated, or embodied in such a work."); <u>Rogers v. Koons</u>, 960 F.2d 301, 308

- 14 -

(2d Cir. 1992) ("What is protected is the original or unique way that an author expresses [his or her] ideas, concepts, principles or processes."); <u>Arden v. Columbia Pictures Indus., Inc.</u>, 908 F. Supp. 1248, 1258-59 & n.3 (S.D.N.Y. 1995) (discussing rule and its rationale).

   2. **Application**

      a. **Actual Copying**

      Genuine issues of material fact exist as to whether Kate Spade actually copied the BDP Photograph. First, issues of fact exist as to whether Leach, a creative director at Kate Spade, or one of her assistants had access to and viewed the BDP Photograph. Leach is the Kate Spade employee who seems to have been most involved in the 2003 advertising campaign. She testified that she did not solicit, receive, or review the Portfolio, but she does not deny that Kate Spade received the Portfolio. (Leach Aff. ¶¶ 11-14). Messenger logs demonstrate that some BDP portfolios went to Kate Spade prior to Kate Spade's hiring of Craig Martin. In addition, the recollection of Diodato's agent, Marge Casey, supports BDP's assertion that Leach or someone who worked with Leach requested and had access to the Portfolio and, consequently, the BDP Photograph. Accordingly, an issue of fact exists as to whether Kate Spade employees involved in the advertising campaign had access to the BDP Photograph. <u>See</u> <u>Jorgensen</u>, 351 F.3d at 51.

      Significantly, the alleged access, if proven at trial, was more than "bare corporate receipt" of the BDP Photograph.

"Bare corporate receipt of [copyrighted] work, without any allegation of a nexus between the recipients and the alleged infringers, is insufficient to raise a triable issue of access." Id. at 53. Here, it is not disputed that Leach met with the photographer of the allegedly infringing photograph and discussed ideas for the photography shoot that resulted in the Kate Spade Photograph. A relationship existed between Craig Martin and Kate Spade employees in control of the advertising campaign and, allegedly, those same employees had access to the BDP Photograph. Although Craig Martin and Leach both deny that anyone at Kate Spade instructed Craig Martin on the taking of the Kate Spade Photograph, those relationships create an issue of fact as to the reasonable possibility of access. A plaintiff "is not required to establish actual access." Id. at 55 (emphasis in original) (citing Bouchat v. Baltimore Ravens, Inc., 241 F.3d 350, 354 (4th Cir. 2000)). "[I]t is enough to prove that the infringer (or his intermediary) had the mere opportunity to see the work." Bouchat, 241 F.3d at 354-55.

Second, the BDP Photograph and the Kate Spade Photograph have similarities probative of copying. Both photographs depict a woman's feet, toes pointed slightly inward, as she sits on a toilet seat, and they both showcase the fashionable shoes worn by the women and the handbags at their side.

Kate Spade argues that there is undisputed evidence that Craig Martin created the Kate Spade Photograph

independently.  (Kate Spade Mem. at 8).  Kate Spade relies on
Silberstein v. Fox Entm't Group, Inc. in arguing that "[e]vidence
of independent creation is an established ground for granting
summary judgment."  No. 02 Civ. 1131(RJH), 2004 U.S. Dist. LEXIS
13554, *27 (S.D.N.Y. July 19, 2004).  In Silberstein, however,
the defendants produced "copious undisputed testimonial and
documentary evidence that the [allegedly infringing cartoon
character] evolved organically out of the research and creative
and narrative developmental work performed by the film's
creators."  Id. at *27-28.  Here, Craig Martin's testimony must
be weighed against BDP's evidence of access and copying, a task
more appropriate for a factfinder.  See Ray Repp & K & R Music,
Inc. v. Lloyd Webber, 132 F.3d 882, 891 (2d Cir. 1997) (holding
that independent creation was question for the factfinder where
district court had "accepted only the version of interested
witnesses on the question of separate creation").[8]

In sum, material issues of fact exist as to the actual
copying aspect of the second element.  A reasonable jury could
find both access and probative similarity.

    b.  **Improper Appropriation**

Assuming for purposes of this motion that Kate Spade

_____

[8]     In arguing that Craig Martin independently created the
allegedly infringing photograph, Kate Spade also relies on the
2000 Craig Martin Photograph (taken of the bottom of a bathroom
stall, with two pairs of feet in shiny heels).  The 2000 Craig
Martin Photograph is distinct enough from the photographs at
issue here -- for example, there is no handbag, the camera does
not directly face the women's feet, and a toilet is not visible
-- that its existence does not resolve the issue of whether Craig
Martin independently created the Kate Spade Photograph.

actually copied the BDP Photograph, the analysis turns to whether the appropriation was improper and, therefore, whether actionable infringement occurred. Even assuming the two photographs share substantial similarities, there is no infringement unless protectible elements were copied. Hence, it is necessary to distinguish between the protectible and unprotectible elements of the BDP Photograph.

To the extent that aspects of the BDP Photograph are derived from the idea of the photograph, or naturally flow from that idea, they are not protectible. As a result, the vast majority of elements in the BDP Photograph that are similar to those in the Kate Spade Photograph are not protectible.

The idea in the BDP Photograph is the depiction of a woman's feet as she sits on the toilet, used as a striking device to highlight fashion accessories. Accordingly, the following elements are not protectible: the dominant shapes of the woman's legs and the toilet base in the BDP Photograph; the inclusion of fashionable shoes and underwear; and the bathroom walls in the background. The bathroom as a setting is also not protectible. These elements are common to the other fashion photographs identified above that feature feet and shoes in a bathroom stall or a person sitting on a toilet. (See, e.g., 1/6/05 Martin Aff. Ex. F, G, H, I, L, O, P; Charlie's Angels Full Throttle).

Relatedly, aspects of the BDP Photograph that necessarily flow from its idea are not protectible. Under the

doctrine of _scènes à faire_, elements of an image that flow
naturally and necessarily from the choice of a given concept
cannot be claimed as original.  See _Williams v. Crichton_, 84 F.3d
581, 587-88 (2d Cir. 1996) ("[S]equences of events that
'necessarily result from the choice of a setting or situation,'
do not enjoy copyright protection." (quoting _Walker v. Time Life_
_Films, Inc._, 784 F.2d 44, 50 (2d Cir. 1986))); _Fournier v._
_Erickson_, 202 F. Supp. 2d 290, 295 (S.D.N.Y. 2002).  Accordingly,
that the legs and handbags are framed by the floor and the
bathroom walls is not protectible; to shoot a photograph of the
bottom part of a woman's legs in a bathroom stall or on a toilet,
it is necessary that the floor and the surrounding bathroom walls
are in the frame.

Likewise, it is standard for the photographer to take
such a photograph from or near the floor, and it follows that a
portion of the floor closest to the camera might be out of focus.
A natural consequence of that positioning is also, often, a head-
on view of the toilet.  See _Hoehling v. Universal City Studios,_
_Inc._, 618 F.2d 972, 979 (2d Cir. 1980) (_scènes à faire_ include
settings that are "as a practical matter indispensable, or at
least standard, in the treatment of a given topic") (internal
quotations and citation omitted), _cert. denied_, 449 U.S. 841
(1980).  In addition, a photographer of such a scene would
generally want the fashion and model to be in sharp focus.

Other elements that are commonly included in images of
this type clearly are not original to BDP, and therefore not

protectible.  The positioning of the model's feet in the BDP
Photograph may seem unique; yet, numerous images in popular
culture with similar premises pose women on toilets, usually in
high heels, their toes pointed slightly inward.  (<u>See</u> 1/6/05
Martin Aff. Ex. F, G, H, O, P; <u>Charlie's Angels Full Throttle</u>;
http://www.ew.com/ew/features/archive/jenny/jenny4.html (last
visited Sept. 24, 2005)).  While seemingly unnatural, the
positioning is clearly not original.  Moreover, such a pose
cannot be copyrighted.  "[I]n cases involving photographs, a
'plaintiff's copyrights cannot monopolize the various poses
used,' and 'can protect only plaintiff's particular photographic
expression of these poses and not the underlying ideas therefor."
<u>Kisch v. Ammirati & Puris Inc.</u>, 657 F. Supp. 380, 382 (S.D.N.Y.
1987) (citation omitted).

     A photographer's use of this pose makes sense.  In
fashion photographs, photographers generally want the shoes,
accessories, or other fashion to be highly visible and the
depiction to be in some way interesting, attractive, or eye-
catching.  If the model's feet are positioned straight toward the
camera, less of the shoes are visible and the image is more
staid; if the model's feet are turned outward, the image is less
attractive.  With toes pointed inward toward the center of the
frame, the viewers eyes are drawn into the photograph, a portion
of the shoes sides are visible, and character is added to the
image.  The pose is common and predictable in such a photograph,
and thus not protectible.

The use and placement of the handbag in the BDP Photograph is a closer question, but this also cannot be protected. The handbags in both photographs are to the left of the model's left foot, angled toward the center of the photograph. In a fashion photograph set in a toilet stall, it is natural to include a handbag. Even if it is not standard, assuming that Kate Spade -- a company known for its handbags -- copied the idea of the BDP Photograph, it would naturally include a handbag. If one is to be included, there are few places that it can be strategically positioned so as not to conceal the model's shoes or fade into the background. To make the handbag most visible, it must be placed at an angle. To the extent that the placement of the bag is not standard in a photograph of this type -- and thus original to the BDP Photograph and not protectible -- I find its use in the Kate Spade Photograph <u>de minimis</u>. The scene created by Diodato as a whole was not original, even if the technical choices he made in rendering the photograph were, and Kate Spade's alleged copying of the placement of the handbag is incidental in this context.

Indeed, although the protectibility and nonprotectibility of individual components of the copyrighted photograph must be considered by the Court, ultimately originality may be determined by the "'total concept and feel'" of the photograph. <u>See</u> <u>Fournier</u>, 202 F. Supp. 2d at 295. Each photograph of this type -- women's feet astride a toilet, fashion accessories highlighted -- is rendered in a distinct way, but the

BDP Photograph is, ultimately, one of many. Diodato's idea, and elements that naturally flow from it, cannot be protected.

The elements that are unique to Diodato's expression of the idea -- and thus protectible -- in fact distinguish it from the allegedly infringing photograph. For example, Diodato uses an abundance of negative grey space; the BDP Photograph is brightly lit; and the selected accessories give the photograph an airy and provocative feel. The model and her accessories are highlighted by their color and seem almost planted into the backdrop of a toilet stall. In the Kate Spade Photograph, the mood, colors, lighting, and depth of objects are distinct, and the view is tightly cropped.[9]

Judge Kaplan recently discussed the "difficulty of distinguishing between idea and expression" in copyright infringement cases, finding that "[i]n the context of photography, the idea/expression distinction is not useful or relevant." Mannion v. Coors Brewing Co., 377 F. Supp. 2d 444, 456-61 (S.D.N.Y. 2005). He ultimately determined that, despite contradictions in the case law, "[t]he cases agree that the

---

[9]     Both photographers clearly have distinct styles. In the 2000 Craig Martin Photograph and the Kate Spade Photograph, both shot by Craig Martin, the camera is close to the ground and the subjects; there is a strong central light and dark shadows; and fashion accessories shine brightly. Likewise, Craig Martin's portfolio demonstrates this distinct style, in which photographs are cropped close to their subjects, only portions of people's bodies are depicted, and fashion accessories become centerpieces in paparazzi-style images. (Craig Martin Aff., Ex. B). Diodato, on the other hand, uses an abundance of negative space to frame his subjects and creates "highly composed" images. (Diodato Aff. ¶ 26).

relevant comparison is between the protectible elements in the [two photographs], but that those elements are not to be viewed in isolation." Id. at 462. In Mannion, there was no serious issue as to the originality of the plaintiff's photograph. Id. at 454-55.[10] Judge Kaplan held that it was an issue of fact whether the images at issue were substantially similar and he therefore denied summary judgment, but he found that the rendition of plaintiff's photograph and the "creation of the subject" were original. Id. at 453-55, 463 ("A photograph may be original to the extent that the photographer created 'the scene or subject to be photographed.'" (citation omitted)); compare Kisch v. Ammirati & Puris Inc., 657 F. Supp. at 382 ("[C]opyrightable elements of a photograph have been described as the photographer's original conception of his subject, not the subject itself. . . . [They] include such features as the photographer's selection of lighting, shading, positioning, and timing." (quotations and citations omitted)).

Here, in contrast, the creation of the subject was not original to Diodato. The BDP Photograph was certainly rendered in an original way -- the technical aspects of the photograph were Diodato's own -- but the scene depicted in the BDP Photograph is a concept that has appeared often in popular culture. The elements that are arguably copied in the Kate Spade

_____

[10]    In Mannion, defendants' advertisement allegedly copied a photograph of basketball player Kevin Garnett. The two works shared a similar composition and angle, both were of a man wearing similar jewelry in a similar pose, and both had a cloudy sky in the background.

Photograph are non-original, unprotectible elements.  The
elements that Diodato adds to the concept -- his "take" on the
idea -- are elements that make the BDP Photograph distinct from
the Kate Spade Photograph, as the latter is original in its
rendition as well.

          **c.**    **Summary Judgment**

      A party seeking summary judgment on a claim of non-
infringement of copyright must establish that at least one
element of the alleged infringement cannot be proven as a matter
of law.  <u>Cantor v. NYP Holdings, Inc.</u>, 51 F. Supp. 2d 309, 311
(S.D.N.Y. 1999).  Summary judgment may be granted when the
similarity between the works relate only to non-copyrightable
elements or when no reasonable jury could find the two works
substantially similar.  <u>Arica Inst., Inc. v. Palmer</u>, 970 F.2d
1067, 1072 (2d Cir. 1992).

      A jury could find that Kate Spade actually copied the
BDP Photograph and that the two photographs are substantially
similar, but a jury could not reasonably find that any
substantial similarities between the photographs relate to
protected elements of the copyrighted work.  Because I hold that
significant elements of the BDP Photograph that are similar to
the Kate Spade Photograph are not protectible -- and that
elements that are protectible are not similar to the Kate Spade
Photograph or are <u>de</u> <u>minimis</u> -- summary judgment is granted in
favor of Kate Spade dismissing the copyright claim.

**B.**    **Lanham Act Claim**

Kate Spade moves to dismiss BDP's second cause of action, brought under the Lanham Act, 15 U.S.C. § 1125, arguing that the claim fails as a matter of law. BDP does not oppose Kate Spade's motion as to the Lanham Act claim. Indeed, the Lanham Act prohibits false designation of the origin of goods in interstate commerce and protects only "the producer of the tangible goods that are offered for sale, and not [] the author of any idea, concept, or communication embodied in those goods." Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29, 37 (2003). BDP alleges that Kate Spade passed off a photograph substantially similar to the Diodato photograph under Kate Spade's name, but this is not a viable Lanham Act claim. BDP is not a producer of tangible goods offered for sale, the alleged conduct does not involve the designation of the origin of goods and, as a result, the conduct does not fall under the purview of the Lanham Act. Accordingly, Kate Spade is entitled to judgment as a matter of law dismissing the Lanham Act claim.

**C.    Rule 56(f) Motion**

    **1.    Applicable Law**

In opposing a summary judgment motion, a party may demonstrate, pursuant to Rule 56(f), that it is entitled to additional discovery by submitting "an affidavit showing (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those

efforts." <u>Gurary v. Winehouse</u>, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotations and citation omitted). Relief under Rule 56(f) will be denied if the discovery appears irrelevant to the issues to be adjudicated. <u>See</u> <u>Contemporary Mission, Inc. v. N.Y. Times Co.</u>, 842 F.2d 612, 622 (2d Cir. 1988). Additionally, "[e]ven where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." <u>Nat'l Union Fire Ins. Co. v. Stroh Co.</u>, 265 F.3d 97, 117 (2d Cir. 2001) (internal quotations and citation omitted).

### 2. **Application**

BDP's motion for additional discovery pursuant to Rule 56(f) is denied. The documents requested by BDP would not create a material issue of fact as to the originality of the BDP Photograph, and thus would not alter the disposition of this case. BDP requests discovery related to, <u>inter</u> <u>alia</u>, the meeting between Craig Martin and Kate Spade, the production and commercial use of the Kate Spade Photograph, and financial records concerning the advertising campaign. (1/28/05 Vaughn-Flam Affirmation ¶ 3). These documents, if they exist, could not alter the analysis as to the protectibility of the BDP Photograph. Thus, BDP's motion under Rule 56(f) is denied.

### **CONCLUSION**

For the foregoing reasons, Kate Spade's motion for summary judgment is granted as to both claims. BDP's Rule 56(f)

motion is denied, and Kate Spade's request for fees and costs is also denied. The complaint is dismissed. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

Dated:  New York, New York
        September 27, 2005

DENNY CHIN
United States District Judge

## APPEARANCES:

For Plaintiff:

                RUBIN BAILIN ORTOLI MAYER
                & BAKER LLP
                      By:   Eric Vaughn-Flam, Esq.
                            Marc Jonas Block, Esq.
                405 Park Avenue, 15th Floor
                New York, New York  10022
                        - and -
                ROBERT M. CAVALLO, ESQ.
                400 Park Avenue
                New York, New York 10022

For Defendant:

                PAUL, WEISS, RIFKIND, WHARTON
                & GARRISON LLP
                      By:  Leslie Gordon Fagen, Esq.
                           Timothy S. Martin, Esq.
                1285 Avenue of the Americas
                New York, New York  10019-6064